Robert C. Schubert (S.B.N. 62684)
Willem F. Jonckheer (S.B.N. 178748)
**SCHUBERT JONCKHEER & KOLBE LLP**
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone:     (415) 788-4220
Facsimile:     (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law

Christian Levis (*pro hac vice* forthcoming)
Margaret MacLean (*pro hac vice* forthcoming)
Amanda Fiorilla (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone:     (914) 997-0500
Facsimile:     (914) 997-0035
clevis@lowey.com
mmaclean@lowey.com
afiorilla@lowey.com

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE HAMMERLING and KAY JACKSON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>GOOGLE LLC, a Delaware limited liability company,<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Marie Hammerling and Kay Jackson ("Plaintiffs"), individually and on behalf of all others similarly situated, assert the following against Google LLC ("Google"), based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## SUMMARY OF ALLEGATIONS

1.     This action arises from Google's monitoring, collection, and misuse of Plaintiffs' and Class members' sensitive personal data without obtaining meaningful consent or providing adequate disclosures as required by law.

2.     Google maintains a dominant position in the smartphone operating systems ("OS") market. Google controls over 75% of the OS market, which powers a majority of smartphones across the globe. Over 2.5 billion consumers use a smartphone that is powered by Google's Android OS (collectively "Android Smartphones").

3.     Google has abused its market position to gain an unfair advantage against its competitors in other industries, including social media platforms and applications such as TikTok, Facebook, and Instagram.

4.     Specifically, Google has relied on an internal secret program called "Android Lockbox." This program allows Google employees to spy on Android Smartphone users. Through Android Lockbox, Google employees have been able to monitor and collect real-time sensitive personal data on users when they interact with non-Google applications (also referred to as "apps") on their smartphones.

5.     By collecting and tracking sensitive personal data from a wide range of non-Google apps, Google gains a wealth of highly personal information about consumers like Plaintiffs and Class members.

6.     For example, Google can determine when a user is sick by collecting data about their interactions with telemedicine apps.

7.     Google can learn details of a user's sleep schedule, menstrual cycle, or exercise routine based on when and how often they interact with an alarm clock app, fertility tracker, or fitness app. Similarly, if a user interacts with a dating app, Google knows whether the user is single.

8.      A congressional inquiry into digital markets found that Google's collection and use of this sensitive personal data provides Google with unique insights on consumers and "near-perfect market intelligence." This information ultimately allows Google to track, monitor, and unfairly compete with potential and actual competitors.[1]

9.      In doing so, Google has foregone obtaining meaningful consent from consumers, like Plaintiffs and Class members, and has chosen to secretively monitor and collect users' sensitive personal data for this undisclosed purpose.

10.      Google's actions are an invasion of Plaintiffs' and Class members' privacy interests, as established through California's privacy laws and California's Constitution. In addition, Google's actions constitute a breach of contract and implied contract, as well as violations of the common law and several state laws.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because more than two-thirds of putative class members are citizens of a state different than Google.

12.      This Court has general personal jurisdiction over Google because its principal place of business is in California. Additionally, Google is subject to specific personal jurisdiction in this State because a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in this State.

13.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the conduct described in this Class Action Complaint was carried out in this District. Furthermore, Google LLC is headquartered in this District and subject to personal jurisdiction in this District.

---

[1] Subcommittee on Antitrust, Commercial, and Administrative Law of the Committee on the Judiciary, Investigation of Competition in Digital Markets, Majority Staff Report and Recommendation (2020).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

14. **Divisional Assignment (L.R. 3-2(c) and (e) and 3-5(b))**: This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred in Santa Clara County. Pursuant to L.R. 3-2(e), all civil actions that arise in Santa Clara County shall be assigned to the Northern District of California San Jose Division.

## PARTIES

### A.    Plaintiffs

15.    Plaintiff **Marie Hammerling** is a natural person and a citizen of the State of Florida and a resident of Lake County. Plaintiff Hammerling has owned several Android Smartphones since 2014. Specifically, Ms. Hammerling purchased a Samsung Galaxy S4 in August of 2013 and an LG Q720T Stylo 5 in January 2020. Ms. Hammerling is currently the owner of an LG LMG900TM (Velvet), which she purchased in October 2020.

16.    Plaintiff Hammerling uses several non-Google apps, including Facebook, Instagram, and TikTok, from which Google collects users' sensitive personal data without consent.

17.    At no point before, after, or during the time of purchase of Plaintiff Hammerling's Android Smartphones was Plaintiff Hammerling informed that Google would collect her sensitive personal data without her consent.

18.    Had Plaintiff Hammerling known that Google would collect her sensitive personal data without consent, she would not have purchased, or would have paid significantly less for, her Android Smartphones.

19.    Plaintiff **Kay Jackson** is a natural person and a citizen of the State of Florida and a resident of Brevard County. Plaintiff Jackson has owned several HTC-branded Android Smartphones between 2014 and 2017. Currently, Ms. Jackson is the owner of an LG V20, which she purchased in December of 2017.

20.    Plaintiff Jackson uses several non-Google apps, including Facebook, from which Google collects users' sensitive personal data without consent.

21.    At no point before, after, or during the time of purchase of Plaintiff Jackson's Android Smartphones was she informed that Google would collect her sensitive personal data without her consent.

22.     Had Plaintiff Jackson known that Google would collect her sensitive personal data without her consent, she would not have purchased, or would have paid significantly less for, her Android Smartphones.

**B.      Google**

23.     Google LLC is a limited liability company existing under the laws of the State of Delaware, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## FACTUAL BACKGROUND

**I.      The History of Google & Android**

24.     Google prides itself on its official motto "don't be evil."

25.     Beginning in August of 1998, Google Inc. was officially formed by Larry Page and Sergey Brin. Since its founding, Google has become a leading technology company. Arguably no other technology company is more responsible for shaping the modern internet than Google.

26.     While Google initially started as an internet search engine, Google has now diversified itself to include a vast array of business units. In 2002, Google launched "Google News," a news aggregation service. Two years later, Google developed "Gmail," a popular email platform. In 2005, "Google Maps" was launched, and dozens of other services, products, and applications have followed since then.

27.     Google has also made a significant amount of acquisitions to further diversify its business. To date, Google has acquired over two hundred companies. Prominent acquisitions include Google's purchase of video platform YouTube in 2006 for $1.65 billion.

28.     Just prior to this acquisition, Google quietly purchased Android, Inc. ("Android") in 2005 for $50 million. In the early days, Android's operating system was used to power several popular smartphones, including Motorola's "Droid," Samsung's "Galaxy," and HTC's "Dream" and "Nexus."

29.     In 2011, Google took steps to acquire Motorola Mobility for $12.5 billion, which marked Google's first attempt to develop smartphone hardware in addition to a mobile operating system. Google eventually sold Motorola Mobility to Lenovo for $2.91 billion. Google would later

go on to internally design the "Pixel" and "Pixel XL" smartphones in October of 2016, both running on Android OS.

30.     Android would soon become one of Google's most successful acquisitions, as Android's mobile operating system is now the most popular smartphone operating system in the world.

31.     For example, as of November 2017, it was estimated that 75.9% of all smartphones run on Android OS. By 2019, Google reported at the I/O developer conference that, at the time, there were currently 2.5 billion active devices running Android OS.

32.     Google abused its dominant market position to unlawfully monitor, collect, and disclose Android Smartphone users' (including Plaintiffs' and Class members') sensitive personal data, without obtaining their consent in order to obtain an unfair advantage over its competitors.

## II.     Google Abuses Android OS to Obtain a Competitive Advantage

33.     In June 2019, the Committee on the Judiciary initiated a bipartisan investigation into competition in digital markets. The investigation focused on the activities of large tech companies, specifically Amazon, Apple, Facebook, and Google. This investigation was spearheaded by the Subcommittee on Antitrust, Commercial, and Administrative Law of the Committee on the Judiciary (the "Subcommittee"), and involved collecting 1.3 million documents, conducting eight hearings, and receiving testimony from each company's Chief Executive Officer, including Sundar Pichai, the Chief Executive Officer of Google.

34.     The Subcommittee concluded that "Google has used Android to entrench and extend its dominance in a host of ways that undermine competition." As one example, the Subcommittee pointed to the creation of Google's "Android Lockbox," which it described as "a covert effort to track real-time data on the usage and engagement of third party apps" to "more closely track its potential and actual competitors."

35.     Based on documents and information reviewed by the Subcommittee, "[s]ince at least 2012, Google has collected installation metrics for third-party apps, which it combined with data analyzing search queries."

36.    The Subcommittee found that "these early documents outline the early stages of Google's 'Lockbox,' a project to collate data that provided Google with a range of competitor insights and market intelligence, ranging from an understanding of how installation of the Amazon app corresponded to a trend in Amazon shopping queries to a close tracking of trends relating to Candy Crush and Angry Birds."

37.    The Subcommittee explained that "Google quickly realized it could harness [Lockbox] to yield other insights as well" and began "seeking out ways to collect specific usage data that enabled Google to track not just which apps a user has, but also how frequently they use the apps and for how long."

38.    Based on the Subcommittee's review of documents from 2015, "Google's Lockbox data had succeeded in tracking more than just install rates. Google's internal reports show that Google was tracking in real-time the average number of days users were active on any particular app, as well as their 'total time spent' in first-and third-party apps."

39.    The Subcommittee found that Lockbox "furnishes Google with near-perfect market intelligence, which Google has used to inform strategic moves and potential business transactions."

40.    As just one example, video platform YouTube, which is owned by Google, uses Android Lockbox to monitor and collect valuable and sensitive personal data to obtain an unfair advantage over rival video platform TikTok in its pursuit of developing a competitor app in India.

41.    Similarly, in the United States, Google's true purpose in using Android Lockbox is to monitor and collect Android Smartphone users' sensitive personal data in its efforts to develop apps to compete with its top social media platform competitors such as TikTok, Facebook, and Instagram. This was confirmed by reporters at *The Information*, who spoke with Google insiders in connection with a July 2020 report on the same subject matter. These sources confirmed that Google monitors and collects Android Smartphone users' sensitive personal data to unfairly compete against TikTok and that it used that information to develop a competing video platform app called "Shorts."

42.     Representative Joe Neguse (D-CO) asked Mr. Pichai during the Subcommittee's sixth hearing "about allegations that Google had used Android to surveil rival apps and develop

competing products." Mr. Pichai conceded that Google uses data collected through Android Lockbox "to understand what's going on in [the] market" by monitoring the "popularity of apps."

43.     When asked to "identify all acquisitions or product decisions that had been informed by data from Android Lockbox," Mr. Pichai would not state the full extent to which Google uses Android Lockbox data. The Subcommittee, accordingly, found Mr. Pichai's answer "not responsive to the question."

44.     *The Information*'s July 2020 article, which the Subcommittee cited in its report, was the first time the existence of the covert Android Lockbox program and Google's secret collection of users' data from non-Google apps was revealed to the public. At no point prior to the release of *The Information* article did Android users or the public at large have any idea that Google was collecting their sensitive personal data from non-Google apps and certainly not for anticompetitive purposes.

45.     In response to *The Information*'s report, Google admitted that it has access to Android Smartphone users' sensitive personal data. A Google spokesperson explained to *The Verge* that "the Android App Usage Data API has been used by Google and Android developers who have been authorized by Android OEMs or users to access basic data about app usage—such as how often apps are opened—to analyze and improve services."

46.     However, despite Google's claim that its practices are "authorized," this is not the case. Google does not disclose, nor seek consent, to monitor, collect, or use Android Smartphone users' sensitive personal data while using non-Google apps.

47.     Nor does Google collect Android Smartphone users' sensitive personal data to "analyze and improve services." Rather, Google uses this information to obtain an unfair competitive advantage over its rivals.

48.     Plaintiff Hammerling and Plaintiff Jackson use various non-Google apps, such as Facebook, Instagram, and TikTok. Plaintiff Hammerling's and Plaintiff Jackson's sensitive personal data relating to these non-Google apps were unlawfully and secretively collected by Google without their consent.

49.     Had Plaintiff Hammerling and Plaintiff Jackson known that Google would surreptitiously collect their sensitive data from non-Google apps without their consent, they would not have purchased, or would have paid significantly less for, Android Smartphones.

**III.    Google Does Not Obtain User Consent to Collect Plaintiffs' and Class Members' Data**

50.      In Google's pursuit of obtaining an unfair economic advantage against its rivals, including TikTok, Google failed to obtain Android Smartphone users' consent to monitor, collect, or use their sensitive personal data.

51.     According to *The Information*, Google purportedly claims to obtain "consent" during the Android setup process. However, users are only vaguely told that Google will collect personal data "to offer a more personalized experience."

52.     Google does not indicate what "a more personalized experience" even entails for Android Smartphone users. Plaintiffs and Class members relied upon this statement when setting up their Android Smartphones thinking that their Android Smartphones would become more "personalized" when in fact Google actually secretly pilfered their sensitive personal data without their consent.

53.     Never is it disclosed that Google actually monitors, collects, and uses sensitive personal data when Android Smartphone users use non-Google apps.

54.     Furthermore, Google's actual purpose in obtaining this information is <u>not</u> to provide a "personalized experience," as Google claims. Rather, Google's true purpose of obtaining Plaintiffs' and Class members' sensitive personal data is to obtain lucrative behind the scenes technical insight that it can use to develop competing apps against its competitors.

55.     Nor does Google's Privacy Policy disclose that (1) Google is monitoring and collecting sensitive personal data while Android Smartphone users interact with non-Google apps, or (2) that Google, in general, collects sensitive personal data to obtain an unfair economic advantage.

56.   Google's Privacy Policy states that it "collect[s] information to provide better services to all our users."[2] As described throughout the Class Action Complaint, Google did not collect this information to "provide better services," but rather collected this data in order to unfairly compete with rivals and develop competing products.

57.   Google explains that it "collect[s] this information when a Google service on your device contacts our servers – for example, when you install an app from the Play Store or when a service checks for automatic updates." Furthermore, it explains "[i]f you're using an Android device with Google apps, your device periodically contacts Google servers to provide information about your device and connection to our services. This information includes things like your device type, carrier name, crash reports, and which apps you've installed."

58.   Nowhere does Google explain, nor obtain consent, to collect Android Smartphone users' data while users interact with non-Google apps, such as the frequency that non-Google apps are used or the duration of time a user spends on non-Google apps. Google only states that it may collect information about "activity on third-party sites and apps that use our services."

59.   This type of vague and ambiguous purported disclosure is deceptively misleading and insufficient for Plaintiffs and Class members to understand, let alone consent to what Google is actually doing—spying on Android Smartphone users.

60.   Without obtaining meaningful consent, Google has chosen to secretively obtain Android Smartphone users' sensitive personal data and exploit this information for its own personal benefit.

61.   Plaintiff Hammerling and Plaintiff Jackson would not have purchased, or would have paid significantly less for, Android Smartphones had they known that Google would surreptitiously collect their sensitive data from non-Google apps without their consent.

---

[2] *Privacy Policy*, GOOGLE (updated Dec. 19, 2019) (archived by Plaintiffs' counsel).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**IV.    Android Smartphone Users Have a Reasonable Expectation of Privacy**

62.     Plaintiffs and Class members have a reasonable expectation of privacy in their sensitive personal data, which Google monitored, collected, and misused. This expectation of privacy is deeply enshrined in California's Constitution.

63.     Article I, Section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, ***and privacy***." Art. I., Sec. 1, Cal. Const (emphasis added).

64.     The phrase "***and privacy***" was added in 1972 after voters approved a legislative constitutional amendment designated as Proposition 11. Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating in relevant part:

> The right of privacy is the right to be left alone . . . It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us.
>
> **Fundamental to our privacy is the ability to control circulation of personal information.** This is essential to social relationships and personal freedom. The proliferation of government and business records over which we have no control limits our ability to control our personal lives. Often we do not know that these records even exist and we are certainly unable to determine who has access to them.[3]

(emphasis added).

65.     Consistent with this language, an abundance of studies examining the collection of consumers' personal data confirms that the surreptitious taking of sensitive personal data from millions of individuals, as Google has done here, violates expectations of privacy that have been established as general social norms.

66.     Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.

---

[3] Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 7, 1972) at 27.

67. For example, a recent study by *Consumer Reports* shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing their data and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[4] Moreover, according to a study by *Pew Research*, a majority of Americans, approximately 79%, are concerned about how data collected about them is used by companies.[5]

68. Based on consumers' preferences and concerns over personal data, Plaintiffs and Class members have an expectation that their highly sensitive personal data would not be collected or used by Google without their knowledge and/or consent. This expectation is especially heightened given that Google purports to disclose all types of data that it will collect, when, and for what purpose, yet makes no mention of the fact that it collects users' personal data from non-Google apps to gain a competitive advantage over Google's rivals.

69. The data Google collects from Plaintiffs and Class members is highly sensitive, as it reveals extremely intricate details about an individual's life. Google can determine, based on an individual's use of certain apps, their religious and political affiliations, their activity level, their sexual preferences and proclivities, and other habits and preferences.

70. Google's surreptitious collection of highly sensitive data without consent constitutes a violation of Plaintiffs' and Class members' concrete privacy interest, including those explicitly enshrined in the California Constitution.

**V.    Google Has a History of Privacy Abuse & Antitrust Violations**

71. This is not the first time Google has abused its dominant market position, including in the OS smartphone market to obtain an unfair competitive advantage. Over the last decade,

---

[4] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

[5] Brooke Auxier, et. al., *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.

Google has been investigated by dozens of regulators across several countries, resulting in billions of dollars to U.S. and foreign regulators in the form of penalties and settlements.

72.     For example, in 2010, nine countries concluded that Google violated privacy laws by collecting personal information, including emails, passwords, and other personal data, in connection with Google's deployment of Google's "Street View" program. U.S. regulators also investigated this conduct, which ultimately resulted in 38 state attorney generals fining Google $7 million for its unlawful and deceptive collection of consumer data. The following year the Federal Communications Commission also fined Google $25,000 for obstructing its investigation into Google's Street View program.

73.     In 2012, the Federal Trade Commission began an investigation into Google's violations of its own privacy promises to consumers with respect to its social network, "Google Buzz." As part of a settlement, Google agreed to stop misrepresenting the extent of control users had concerning the collection of their personal information. In August 2012, Google was fined $22.5 million for violating the terms of the settlement.

74.     The following year, Google paid $17 million to 37 states and the District of Columbia as compensation for circumventing the privacy settings of Apple Safari web browser users.

75.     In 2018, Google was hit with a "record-breaking" $5 billion fine by European Union regulators for breaking antitrust laws in connection with its Android services. The European Commission found that Google unlawfully bundled its other services, such as its search engine and "Chrome" apps into its OS system, among other things. As a result, Google was required to discontinue its practice of preinstalling Chrome and other Google apps on smartphones.

76.     On January 21, 2019, the French administrative regulatory body, *Commission nationale de l'informatique et des libertés* ("CNIL") fined Google $57 million for lack of transparency and failure to provide a reasonable basis for processing its users' personal data. The CNIL observed that Google failed to obtain valid user consent because users were not "sufficiently informed" and their disclosures were not "specific" nor "unambiguous" as required by Europe's General Data Protection Regulation.

77.     On May 27, 2020, Google was sued by the State of Arizona for deceptive and unfair business practices in connection with how it obtains users' location data, which it exploits to obtain an unfair advantage in its advertising business. *See State of Arizona ex rel Mark Brnovich, Attorney General v. Google LLC,* Case No. CV2020-006219 (Arizona Super. Ct. Maricopa Cty.).

78.     It is therefore not surprising that Google has once again taken advantage of its dominant market position to unlawfully collect sensitive personal data—without consent—in furtherance of Google's own agenda, i.e., to gain an unfair economic advantage against its rivals.

## TOLLING OF THE STATUTE OF LIMITATIONS

79.     The applicable statutes of limitation have been tolled because of Google's knowing and active concealment and denial of the facts alleged herein, namely the existence of Android Lockbox and their practice of collecting, analyzing, and using Plaintiffs' and Class members' highly sensitive data without consent.

80.     As alleged in detail herein, Google never disclosed that it would collect, analyze, or use Android Smartphone users', including Plaintiffs', highly sensitive data from non-Google apps. Nowhere in Google's Privacy Policy or elsewhere does Google state that it collects, analyzes, and uses Android Smartphone users' highly sensitive data from non-Google apps. Google misrepresented and concealed the nature and extent of its actions and intentions.

81.     Each of the acts alleged herein was done with the purpose of concealing Google's misconduct and preventing Plaintiffs, and the public at large, from discovering with reasonable diligence the existence of Android Lockbox and Google's collection, analysis, and use of Plaintiffs' and Class members' highly sensitive data without consent.

82.     Google's affirmative acts of fraudulent concealment of Android Lockbox and its collection, analysis, and use of Plaintiffs' and Class members' highly sensitive data without consent prevented Plaintiffs from having notice of their claims and has tolled the statute of limitations on Plaintiffs' claims.

83.     The first time Plaintiffs knew or could have known of this information was when it became public as a result of the July 2020 report published by *The Information*.

84.     Google was under a duty to disclose the nature and significance of its data collection, including specifically its collection and use of highly sensitive data from non-Google apps, but did not do so. Google is therefore estopped from relying on any statute of limitations.

85.     All applicable statutes of limitation also have been tolled by operation of the discovery rule and Google's fraudulent concealment.

**CLASS ACTION ALLEGATIONS**

86.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All Android Smartphone users from at least as early as January 1, 2014 through the present (the "Class Period").[6]

87.     Excluded from the Class are: (1) any Judge or Magistrate Judge presiding over this action and any members of their staff and families; (2) Google, Google's subsidiaries, parents, successors, predecessors, and any entity in which Google or its parent has a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Google's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

88.     **Ascertainability:** Membership of the Class is defined based on objective criteria, and individual members will be identifiable from Google's records.

89.     **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class likely consists of millions of individuals, and the members can be identified through Google's records.

90.     **Predominant Common Questions:** The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

a.     Whether Google violated Plaintiffs' and Class members' privacy rights;

---

[6] Plaintiffs have defined the Class based on currently available information and hereby reserve the right to amend the definition of the Class, including, without limitation, the Class Period.

b.      Whether Google's acts and practices complained of herein amount to egregious breaches of social norms;

c.      Whether Google and Plaintiffs formed implied contracts;

d.      Whether Google breached implied contracts with Plaintiffs and the Class members;

e.      Whether Google's conduct was unfair;

f.      Whether Google's conduct was fraudulent;

g.      Whether Plaintiffs and the Class members are entitled to equitable relief, including but not limited to, injunctive relief, restitution, and disgorgement; and

h.      Whether Plaintiffs and the Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

91.      **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the proposed Class. Google's conduct that gave rise to Plaintiffs' claims and those of the members of the Class is the same for all members of the Class.

92.      **Adequate Representation:** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions, including privacy violations. Plaintiffs have no interest that is antagonistic to those of the Class, and Google has no defenses unique to any Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

93.      **Substantial Benefits:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

94.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

95.     California's substantive laws apply to every member of the Class, regardless of where in the United States the Class member resides.

96.     Google's Terms of Service states "these terms [are] important because, by using our services, you're agreeing to these terms."[7] The Terms of Service make clear under the subheading "Settling disputes, governing law, and courts" that "California law will govern all disputes arising out of or relating to these terms . . . These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts."[8]

97.     By choosing California law for the resolution of disputes in the agreement, Google concedes that it is appropriate for this Court to apply California law to the instant dispute.

98.     Further, California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit Clause, Art. IV § 1 of the U.S. Constitution. California has significant contacts, or a significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

99.     Google's United States headquarters and principal place of business is located in California. Google also owns property and conduct substantial business in California, and therefore California has an interest in regulating Google's conduct under its laws. Google's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and

---

[7] *Terms of Service*, GOOGLE, (last updated March 31, 2020), https://policies.google.com/terms?hl=en-US.
[8] *Id.*

emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

100.    California is also the state from which Google's alleged misconduct emanated. This conduct similarly injured and affected Plaintiffs and all other Class members.

101.    The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Common Law Invasion of Privacy – Intrusion Upon Seclusion**
**(On Behalf of Plaintiffs and the Class)**

102.    Plaintiffs re-allege and incorporate the preceding allegations of this Class Action Complaint with the same force and effect as if fully restated herein.

103.    Plaintiffs asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a matter as to which plaintiffs have a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

104.    Google intruded upon Plaintiffs' and Class members' seclusion by (1) collecting, retaining and monitoring their Android Smartphone activity in which they had a reasonable expectation of privacy; and (2) in a manner that was highly offensive to Plaintiffs and Class members, would be highly offensive to a reasonable person, and was an egregious violation of social norms.

105.    Google's conduct violated Plaintiffs' and Class members' interests by monitoring and disseminating sensitive and confidential personal data concerning their electronic activity and other affairs (i.e., their informational privacy rights), as well as their interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference (i.e., their autonomy privacy rights).

106.     The surreptitious monitoring, transmission, and disclosure of personal, confidential, and private information from millions of individuals was highly offensive because it violated expectations of privacy that have been established by general social norms. Privacy polls and studies consistently show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is shared.

107.     Google intentionally engaged in the misconduct alleged herein for its own financial benefit.

108.     As a result of Google's actions, Plaintiffs and Class members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

109.     Unwanted monitoring and dissemination of sensitive personal data in violation of the law or social norms is actionable under California law.

110.     Plaintiffs and Class members have been damaged as a direct and proximate result of Google's invasion of their privacy and are entitled to just compensation.

111.     Plaintiffs and Class members are entitled to appropriate relief, including compensatory damages for the harm to their privacy and dignitary interests, loss of valuable rights and protections, heightened risk of future invasions of privacy, and mental and emotional distress.

112.     Plaintiffs and Class members are entitled to an order requiring Google to disgorge profits or other benefits that Google acquired as a result of its invasions of privacy.

113.     Plaintiffs and Class members are entitled to punitive damages resulting from the malicious, willful and intentional nature of Google's actions, directed at injuring Plaintiffs and Class members in conscious disregard of their rights. Such damages are needed to deter Google from engaging in such conduct in the future.

114.     Plaintiffs also seeks such other relief as the Court may deem just and proper.

**SECOND CLAIM FOR RELIEF**
**Invasion of Privacy**
**Art. I, Sec. 1 of the California Constitution**
**(On Behalf of Plaintiffs and the Class)**

115.     Plaintiffs re-allege and incorporate the preceding allegations of this Class Action Complaint with the same force and effect as if fully restated herein.

116.   Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Art. I, § 1, Cal. Const.

117.   The right to privacy in California's constitution creates a private right of action against private and government entities.

118.   To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

119.   Google violated Plaintiffs' and Class members' constitutional right to privacy by collecting, retaining and disseminating (1) sensitive personal data in which they had a legally protected privacy interest, (2) sensitive personal data in which they had a reasonable expectation of privacy, (3) in a manner that was highly offensive to Plaintiffs and Class members, would be highly offensive to a reasonable person, and was an egregious violation of social norms.

120.   Google has intruded upon Plaintiffs' and Class members' legally protected privacy interests, including, *inter alia*: (i) interests in precluding the dissemination or misuse of sensitive and confidential personal data ("informational privacy"); (ii) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ("autonomy privacy").

121.   The confidential and sensitive data, which Google monitored, transmitted, and disclosed without Plaintiffs' and Class members' authorization and/or consent included, *inter alia*, how long Plaintiffs and Class members use certain apps and how often apps were open. Plaintiffs and Class members had a legally protected informational privacy interest in the confidential and sensitive information as well as an autonomy privacy interest in conducting their personal activities without observation, intrusion, or interference.

122.   Google's actions constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that: (i) the invasion occurred within a zone of privacy protected

19

by the California Constitution, namely the collection and stockpiling of unnecessary information by businesses without consent, and the misuse of information gathered for an improper purpose; (ii) the invasion deprived Plaintiffs and Class members of the ability to control the circulation of their personal information, which is considered fundamental to the right to privacy.

123.    Plaintiffs and Class Members had a reasonable expectation of privacy in that: (i) Google's invasion of privacy occurred as a result of Google secretively monitoring, collecting, and transmitting sensitive personal data; (ii) Plaintiffs and Class members did not consent or otherwise authorize Google to monitor, collect, or transmit their sensitive personal data; (iii) Plaintiffs and Class members could not reasonably expect Google would commit acts in violation of laws protecting privacy.

124.    As a result of Google's actions, Plaintiffs and Class members have been damaged as a direct and proximate result of Google's invasion of their privacy and are entitled to just compensation.

125.    Plaintiffs and the Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and Class members for the harm to their privacy interests as well as disgorgement of profits made by Google as a result of its intrusions upon Plaintiffs' and Class members' privacy.

**THIRD CLAIM FOR RELIEF**
**Violation of Cal. Civ. Code § 1709**
**(On Behalf of Plaintiffs and the Class)**

126.    Plaintiffs re-allege and incorporate the preceding allegations of this Class Action Complaint with the same force and effect as if fully restated herein.

127.    California Civil Code § 1709 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." A defendant violates § 1709 if (i) it had a duty to disclose a material fact to the Plaintiffs; (ii) it intentionally concealed that fact with intent to defraud; (iii) Plaintiffs were unaware of that fact (and would have acted differently if he were aware), and (iv) Plaintiffs sustained some damage as a result.

128. California Civil Code § 1710 defines "deceit" as "1. [t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. [t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. [t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, 4. [a] promise, made without any intention of performing it."

129. Google engaged in various acts of deceit. Google either suggested that certain facts are true which it knew were not true or which it had no reasonable grounds to believe were true. For example, Google claimed that its collection of Plaintiffs' and Class members' data is "to provide better services."[9] Additionally, when users set up an Android phone, Google claims to collect Plaintiffs' and Class members' data to provide "a more personalized experience."

130. Both statements are objectively false: neither of these are the real purpose of Google's data collection practices. Despite Google's claim, Google collects Plaintiffs' and Class members' sensitive personal data to gain an unfair competitive edge over its competitors, such as TikTok, Instagram, and Facebook.

131. Furthermore, Google suppresses facts and provides other facts that are likely to mislead. Nowhere in Google's Privacy Policy or elsewhere is it ever disclosed the full extent of Google's data collection practices, including the frequency in which Plaintiffs and Class members open non-Google apps and the duration of time spent on non-Google apps. By failing to disclose these material facts, Plaintiffs and Class members were deceived.

132. Google willfully engaged in these acts of deceit with intent to induce Plaintiffs and Class members to alter their position to their injury or risk, namely by turning over their sensitive personal data to Google under false pretenses.

133. Google had a duty to disclose these facts to Plaintiffs and Class members; it intentionally concealed those facts with intent to defraud; Plaintiffs and Class members were

---

[9] *Privacy Policy*, GOOGLE, (last updated July 1, 2020), https://policies.google.com/privacy?hl=en-US#infocollect.

unaware of these facts and would have acted differently if they were aware; and Plaintiffs and Class members sustained damage as a result.

134.   Google also willfully engaged in these acts of deceit so that they could access, monitor, transmit, and disclose Plaintiffs' and Class members' sensitive personal data for their own personal benefit, including an economic advantage over its competitors.

135.   Plaintiffs and Class members would not have purchased, or would have paid significantly less for, Android Smartphones had they known of Google's misrepresentations and omissions concerning its collection and use of users' highly sensitive data from non-Google apps.

136.   Plaintiffs and Class members seek recovery of their resulting damages, including economic damages, restitution, and disgorgement, as well as punitive damages and such other relief as the Court may deem just and proper.

**FOURTH CLAIM FOR RELIEF**
**Violation of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiffs and the Class)**

137.   Plaintiffs re-allege and incorporate the preceding allegations of this Class Action Complaint with the same force and effect as if fully restated herein.

138.   Google's conduct as alleged herein constitutes unlawful, unfair, and/or fraudulent business acts or practices as prohibited by the UCL.

139.   Google engaged in business acts and practices deemed "unlawful" under the UCL, because, as alleged above, Google unlawfully monitored, collected, disclosed, and otherwise misused Plaintiffs' and Class members' sensitive personal data without consent in violation of the California common law, California Constitution, California Civil Code § 1709, and the California Consumer Privacy Act.

140.   "Unfair" acts under the UCL have been interpreted using three different tests: (1) whether the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business practice outweighs the utility of the Google's conduct; and (3) whether the consumer injury is substantial,

not outweighed by any countervailing benefits to consumers or competition, and is an injury that consumers themselves could not reasonably have avoided.  Google's conduct is unfair under each of these tests.

141.    Google engaged in business acts or practices deemed "unfair" under the UCL because, as alleged above, Google failed to disclose during the Class Period that it was monitoring, collecting, disclosing, and otherwise misusing Plaintiffs' and Class members' sensitive personal data. *See* Cal. Bus. & Prof. Code § 17200.

142.    Google's conduct was also unfair because it secretly collected Plaintiffs' and Class members' sensitive personal data—without their consent—in furtherance of benefitting itself, including secretive market research, and did not adequately compensate Plaintiffs and Class members for this information.

143.    Google's conduct violates the policies of the statutes referenced above. Moreover, Google's conduct is contrary to public policy, immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers. Among other things, it is contrary to the public policy in favor of protecting consumer data.

144.    The gravity of the harm of Google's secretive monitoring, collecting, disclosing, and other misuse of Plaintiffs' and Class members' sensitive personal data is significant and there is no corresponding benefit resulting from such conduct. Finally, because Plaintiffs and Class Members were completely unaware of Google's conduct, they could not have possibly avoided the harm.

145.    Google's conduct, as described herein, constitutes a fraudulent business practice within the meaning of the UCL. Google has been able to amass a large collection of sensitive personal data by deceiving Plaintiffs and Class members into believing this type of information was private and not monitored, collected, and misused by Google, and that, any information it did collect was for the sole purpose of offering a more personalized experience.

146.    Had Plaintiffs known that their information would be monitored, disclosed, and misused for Google's sole benefit, they would not have Google purchased, or would have paid significantly less for, Android Smartphones. Plaintiffs and Class Members have a property interest in their sensitive personal data. By surreptitiously intercepting, disclosing, and otherwise misusing

Plaintiffs' and Class members' information, Google has taken property from Plaintiffs and Class members without providing just or any compensation.

147.    Plaintiffs and Class members have lost money and property as a result of Google's conduct in violation of the UCL and seek restitution on behalf of themselves and Class members. Additionally, Plaintiffs individually and on behalf of the Class, seek an injunction enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete Plaintiffs' and Class members' sensitive personal data, to cease further collection of Plaintiffs' and Class members' sensitive personal data, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent.

**FIFTH CLAIM FOR RELIEF**
**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750,** ***et seq.***
**(On Behalf of Plaintiffs and the Class)**

148.    Plaintiffs re-allege and incorporate the preceding allegations of this Class Action Complaint with the same force and effect as if fully restated herein.

149.    By failing to disclose that Google secretly monitored, collected, and otherwise misused Plaintiffs' and Class members sensitive personal data while using non-Google apps, Google engaged in "unfair methods of competition and unfair or deceptive acts . . . in a transaction . . . that result[ed] . . . in the sale . . . of goods" to Plaintiffs and the Class members in violation of Cal. Civ. Code § 1750 and Cal. Civ. Code § 1770(a)(5), (7), (9), (14), (16).

150.    For instance, Google made representations that it would protect Plaintiffs' privacy interest, including explicit statements that data would only be accessed and collected in certain specific situations, none of which included collecting sensitive personal data while Plaintiffs and Class members interact with non-Google apps.

151.    Google made these representations with no intention of living up to these representations.

152.    Plaintiffs and Class members would not have purchased, or would have paid significantly less for, Android Smartphones had Google not made these false representations.

24

153.    Plaintiffs, individually and on behalf of the Class, seek an injunction requiring Google to obtain consent prior to monitoring, collecting, and otherwise using Plaintiffs' and Class members' sensitive personal data and to delete the data already collected, and any other relief which the court deems proper.

154.    Plaintiffs, on behalf of themselves and the Class, further seek compensatory and punitive damages. Pursuant to Cal. Civ. Code § 1782(a), Plaintiffs served Google with notice of its alleged violations of the CLRA by certified mail return receipt requested. Google failed to provide appropriate relief for its violations of the CLRA within 30 days. Accordingly, Plaintiffs seek monetary damages under the CLRA.

155.    Plaintiffs were injured by Google's CLRA violations. As a result, Plaintiffs are entitled to actual damages in an amount to be proven at trial, reasonable attorneys' fees and costs, declaratory relief, and punitive damages.

156.    In accordance with Cal. Civ. Code § 1780(d), Plaintiffs' CLRA venue declarations are attached hereto as Exhibit A and Exhibit B.

<u>**SIXTH CLAIM FOR RELIEF**</u>
**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

157.    Plaintiffs re-allege and incorporate the preceding allegations of this Class Action Complaint with the same force and effect as if fully restated herein.

158.    Plaintiffs entered into contracts with Google by purchasing Android Smartphones. As part of these contracts, Google and Plaintiffs both agreed to abide by Google's Terms of Service ("TOS").  Plaintiffs have fully complied with his obligations under the TOS with regard to their use of Google's product and/or services.

159.    The TOS states that "by using our Services, you are agreeing to these terms."  The TOS expressly adopt additional terms relevant to specific services as follows: "Our Services are very diverse, so sometimes additional terms or product requirements (including age requirements) may apply. Additional terms will be available with the relevant Services, and those additional terms become part of your agreement with us if you use those Services."

160.    Plaintiffs and Google are subject to Google's privacy policy, which is incorporated into the contract through the TOS.[10]

161.    The contract equally incorporates and implements Google's "Privacy and Security Principles" which "guide our products, our processes, and our people in keeping our users' data private, safe, and secure."[11] The overarching Privacy and Security Principle is to: "Respect our users. Respect their privacy."

162.    Google's privacy policy states that it "collect[s] information to provide better services to all our users."[12] Google breached the contract because it did not collect this information to "provide better services," rather, it was to gain a competitive edge in the market against its rivals.

163.    Google's privacy policy does not disclose that Google is monitoring and collecting sensitive personal data while Android Smartphone users interact with non-Google apps. Google only states that it may collect information about "activity on third-party sites and apps that use our services." Google breached its contract with Plaintiffs and Class members by monitoring and collecting sensitive personal data, beyond the scope of Google's privacy policy and the TOS.

164.    By tracking Plaintiffs' and Class members' app activity without their consent, Google has breached material terms of the contract.

165.    As a result of Google's breach of contract, Plaintiffs and Class members have suffered damages. Specifically, the products Plaintiffs and Class members received in exchange for the purchase price of Android Smartphones were worth less than what they paid for because Plaintiffs' sensitive personal information was monitored and collected without their consent. Plaintiffs and Class members would not have purchased, or would not have paid as high a price, for Android Smartphones if they had known that Google would breach the TOS and privacy policy by tracking their activity, including their activity on non-Google apps, when using an Android Smartphone.

---

[10] *Privacy Policy*, GOOGLE, (last updated July 1, 2020), https://policies.google.com/privacy?hl=en-US#infocollect.

[11] *Our Privacy and Security Principles*, GOOGLE, https://safety.google/principles/ (last visited July 29, 2020).

[12] *Privacy Policy*, GOOGLE, (updated Dec. 19, 2019) (archived by Plaintiffs' counsel).

**SEVENTH CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

166.     Plaintiffs re-allege and incorporate the preceding allegations of this Class Action Complaint with the same force and effect as if fully restated herein.

167.     Plaintiffs plead this claim in the alternative to the Sixth Claim for Relief of Breach of Contract alleged above.

168.     When Plaintiffs and Class members paid money and purchased one or more Android Smartphones, they entered into implied contracts with Google.

169.     Google solicited and invited prospective customers such as Plaintiffs and Class members with claims that it cares about Plaintiffs' and Class members' privacy rights.

170.     Google's offer included specific assurances from Google's TOS and privacy policy, including that Google would only collect data to "improve [their] services" and only in the limited situations described in the TOS.

171.     Plaintiffs and Class members accepted Google's offers and purchased the Android Smartphones because of these promises.

172.     In entering into such implied contracts, Plaintiffs and Class members reasonably believed that Google would comply with relevant laws and regulations, including privacy laws.

173.     Plaintiffs and Class members reasonably believed that Google would not monitor and/or record their app usage activity, as stated in its TOS and privacy policy.

174.     Google's implied promise not to collect Plaintiffs' and Class members sensitive personal information is evidenced by, e.g., the representations in Google's TOS and privacy policy set forth above.

175.     Plaintiffs and Class members would not have purchased Android Smartphones in the absence of such promises.

176.     Plaintiffs and Class members fully performed their obligations under the implied contracts with Google by paying for their Android Smartphones.

177.    Google breached its implied contract with Plaintiffs and Class members by secretly spying on users' activity and collecting sensitive personal data for Google's own benefit, in violation of the TOS and privacy policy.

178.    As a result of Google's breach of implied contract, Plaintiffs and Class members have suffered damages. Specifically, the products Plaintiffs and Class members received in exchange for the purchase price of Android Smartphones were worth less than what they paid for because Plaintiffs' sensitive personal information was monitored and collected without their consent.  Plaintiffs and Class members would not have purchased, or would not have paid as high a price, for Android Smartphones if they had known that Google would breach the TOS and privacy policy by tracking their activity, including their activity on non-Google apps, when using an Android Smartphone.

**EIGHTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

179.    Plaintiffs re-allege and incorporate the preceding allegations of this Class Action Complaint with the same force and effect as if fully restated herein.

180.    Plaintiffs plead this claim in the alternative to the Sixth Claim for Relief of Breach of Contract and Seventh Claim for Relief of Breach of Implied Contract, alleged above.

181.    Google received benefits from Plaintiffs and Class members and unjustly retained those benefits at their expense.

182.    Google received benefits from Plaintiffs and Class members in the form of the sensitive personal data that Google collected from Plaintiffs and Class members without authorization and proper compensation. Google has monitored, transmitted, and analyzed this data, for its own gain, providing Google with economic, intangible, and other benefits, including an unfair economic advantage over its competitors.

183.    Google unjustly retained those benefits at the expense of Plaintiffs and Class members because Google's conduct damaged Plaintiffs and Class members, all without providing any commensurate compensation to Plaintiffs and the Class.

184.    The benefits that Google derived from Plaintiffs and Class members rightly belong to Plaintiffs and Class members. It would be inequitable under unjust enrichment principles in California and every other state for Google to be permitted to retain any of the profit or other benefits it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Class Action Complaint.

185.    Google should be compelled to disgorge in a common fund for the benefit of Plaintiffs and Class members all unlawful or inequitable proceeds it received, and such other relief as the Court may deem just and proper.

### NINTH CLAIM FOR RELIEF
**Request for Relief Under the Declaratory Judgment Act**
**28 U.S.C. §§ 2201, *et seq.***
**(On Behalf of Plaintiffs and the Class)**

186.    Plaintiffs re-allege and incorporate the preceding allegations of this Class Action Complaint with the same force and effect as if fully restated herein.

187.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the federal and state statutes described in this Class Action Complaint.

188.    An actual controversy has arisen in the wake of Google's monitoring, collection, and misuse of Plaintiffs' and Class members' sensitive personal data without their consent as alleged herein in violation of Google's common law and statutory duties.

189.    Plaintiffs continue to suffer injury and damages as described herein as Google continues to monitor, collect, and misuse Plaintiffs' and Class members' sensitive personal data.

190.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Google continues to owe a legal duty to not monitor, collect, and misuse Plaintiffs' and Class members' sensitive personal information under, *inter alia*, the common

law, California Constitution, Cal. Civil Code § 1709, and the California Consumer Privacy Act.

    b.    Google continues to breach its legal duties and be in breach of their contract with Plaintiffs and Class members by continuing to monitor, collect, and misuse Plaintiffs' and Class members' sensitive personal data; and

    c.    Google's ongoing breaches of its legal duties and breach of contract continue to cause Plaintiffs and Class members harm.

191.    The Court should also issue corresponding injunctive relief, including but not limited to enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete Plaintiffs' and Class members' data, cease further collection of Plaintiffs' and Class members' sensitive data, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent.

192.    If an injunction is not issued, Plaintiffs and the Class members will suffer irreparable injury and lack an adequate legal remedy in the event of Google's ongoing conduct.

193.    Federal and state laws prohibit, among other things, the unlawful monitoring, collection, and misuse of sensitive personal data without consent. California specifically recognizes privacy as a fundamental right. Given that Google admits that it monitors and collects its customers' sensitive personal data, the risk of continued violations of federal and California law is real, immediate, and substantial. Plaintiffs do not have an adequate remedy at law because many of the resulting injuries are reoccurring and Plaintiffs will be forced to bring multiple lawsuits to rectify the same conduct.

194.    The hardships to Plaintiffs and Class members if an injunction is not issued exceed the hardships to Google if an injunction is issued. On the other hand, the cost to Google of complying with an injunction by complying with federal and California law and by ceasing to engage in the misconduct alleged herein is relatively minimal, and Google has a pre-existing legal obligation to avoid invading the privacy rights of consumers.

195.    Issuance of the requested injunction will serve the public interest by preventing ongoing monitoring, collection, and misuse of sensitive personal data without consent, thus

eliminating the injuries that would result to Plaintiffs and the Class, and the potentially hundreds of thousands of consumers who purchased Android Smartphones.

**TENTH CLAIM FOR RELIEF**
**Request for Relief Under California's Invasion of Privacy Act**
**Cal. Penal Code § 631**
**(On Behalf of Plaintiffs and the Class)**

196.    Plaintiffs re-allege and incorporate the preceding allegations of this Class Action Complaint with the same force and effect as if fully restated herein.

197.    California's Invasion of Privacy Act ("CIPA") prohibits persons from intentionally, willfully and without the consent of all parties to the communication, or in any unauthorized manner, reading, or attempting to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within California. Cal. Penal Code § 631.

198.    CIPA also prohibits any person from using, or attempting to use, in any manner, or for any purpose, or communicating in any way, any information so obtained. CIPA further provides that any person who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above is punishable by fine or imprisonment. California Penal Code § 631.

199.    As described herein, Plaintiffs and the Class members did not authorize Google to collect the subject information. Without the consent of Plaintiffs or the Class, Google aided, agreed with, employed, or permitted the unauthorized disclosures of users' information.

200.    At all times, Google's actions complained of herein have been intentional and willful, as evidenced by the design and features enabling unauthorized data collection and disclosure.

201.    Plaintiffs and the Class members suffered harm as a result of Google's violations of CIPA, and therefore seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the greater of five thousand ($5,000) per violation and three times the amount of actual damages sustained, as authorized by California Penal Code § 637.2, and (c) reasonable attorneys' fees and other litigation costs reasonably incurred.

1                                               **PRAYER FOR RELIEF**

2            WHEREFORE, Plaintiffs on behalf of themselves and the proposed Class respectfully

3 request that the Court enter an order:

4            A.      Certifying the Class and appointing Plaintiffs as Class Representatives and their

5                       counsel as Class Counsel;

6            B.      Finding that Google's conduct was unlawful as alleged herein;

7            C.      Awarding such injunctive and other equitable relief as the Court deems just and

8                       proper;

9            D.      Awarding Plaintiffs and the Class members statutory, actual, compensatory,

10                      consequential, punitive, and nominal damages;

11            E.      Awarding Plaintiffs and the Class members pre-judgment and post-judgment

12                      interest;

13            F.      Awarding Plaintiffs and the Class members reasonable attorneys' fees, costs, and

14                      expenses; and

15            G.      Granting such other relief as the Court deems just and proper.

16                                       **DEMAND FOR JURY TRIAL**

17            Plaintiffs demand a trial by jury for all issues so triable.

18

19 Dated:  November 19, 2021                 */s/ Willem F. Jonckheer*

20                                      Robert C. Schubert (S.B.N. 62684)
                                     Willem F. Jonckheer (S.B.N. 178748)

21                                      **SCHUBERT JONCKHEER & KOLBE LLP**
                                     Three Embarcadero Center, Suite 1650

22                                      San Francisco, California 94111
                                     Telephone:     (415) 788-4220

23                                      Facsimile:     (415) 788-0161
                                     rschubert@sjk.law

24                                      wjonckheer@sjk.law

25

26                                      Christian Levis (*pro hac vice* forthcoming)
                                     Margaret MacLean (*pro hac vice* forthcoming)

27                                      Amanda Fiorilla (*pro hac vice* forthcoming)
                                     **LOWEY DANNENBERG, P.C.**

28                                      44 South Broadway, Suite 1100

White Plains, NY 10601
Telephone:      (914) 997-0500
Facsimile:      (914) 997-0035
clevis@lowey.com
mmaclean@lowey.com
afiorilla@lowey.com

*Attorneys for Plaintiffs and the Proposed Class*

# EXHIBIT A

Robert C. Schubert (S.B.N. 62684)
Willem F. Jonckheer (S.B.N. 178748)
**SCHUBERT JONCKHEER & KOLBE LLP**
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law

Christian Levis (pro hac vice forthcoming)
Margaret Maclean (pro hac vice forthcoming)
Amanda Fiorilla (pro hac vice forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
mmaclean@lowey.com
afiorilla@lowey.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIE HAMMERLING, and KAY JACKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, a Delaware limited liability company,<br><br>Defendants. | **CLRA VENUE DECLARATION OF PLAINTIFF MARIE HAMMERLING PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)** |

I, Marie Hammerling, declare as follows:

1.   I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2.   I am a Plaintiff in the above captioned action.

3.   I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code section 1750 *et seq.*

4.   The Class Action Complaint has been filed in the proper place for trial of this action.

5.   Defendant Google LLC has its principal place of business in Mountain View, California, which is within Santa Clara County. Google LLC conducts substantial business, including the acts and practices at issue in this action, within Santa Clara County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on November 12, 2021 in _Mount Dora, Florida 32757_

By: _Marie Hammerling_
Marie Hammerling

# EXHIBIT B

1   Robert C. Schubert (S.B.N. 62684)
    Willem F. Jonckheer (S.B.N. 178748)
2   **SCHUBERT JONCKHEER & KOLBE LLP**
3   Three Embarcadero Center, Suite 1650
    San Francisco, California 94111
4   Telephone: (415) 788-4220
    Facsimile: (415) 788-0161
5   rschubert@sjk.law
    wjonckheer@sjk.law
6

7   Christian Levis (pro hac vice forthcoming)
    Margaret Maclean (pro hac vice forthcoming)
8   Amanda Fiorilla (pro hac vice forthcoming)
9   **LOWEY DANNENBERG, P.C.**
    44 South Broadway, Suite 1100
10  White Plains, NY 10601
    Telephone: (914) 997-0500
11  Facsimile: (914) 997-0035
12  clevis@lowey.com
    mmaclean@lowey.com
13  afiorilla@lowey.com

14  *Attorneys for Plaintiffs*

15              **UNITED STATES DISTRICT COURT**
16              **NORTHERN DISTRICT OF CALIFORNIA**

17  | MARIE HAMMERLING, and KAY |
    | JACKSON, individually and on behalf of all |
18  | others similarly situated, |

19  |                        Plaintiff, |    **CLRA VENUE DECLARATION OF**
20  |         v. |                          **PLAINTIFF KAY JACKSON PURSUANT**
                                            **TO CALIFORNIA CIVIL CODE SECTION**
21  | GOOGLE LLC, a Delaware limited liability | **1780(d)**
    | company, |
22
23  |                        Defendants. |

24

25

26

27

28

I,  Kay Jackson, declare as follows:

1.      I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2.      I am a Plaintiff in the above captioned action.

3.      I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code section 1750 *et seq.*

4.      The Class Action Complaint has been filed in the proper place for trial of this action.

5.      Defendant Google LLC has its principal place of business in Mountain View, California, which is within Santa Clara County. Google LLC conducts substantial business, including the acts and practices at issue in this action, within Santa Clara County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on November 15th, 2021 in *Brevard County*.

By: _Kay Jackson_____
Kay Jackson

---

CLRA VENUE DECLARATION OF PLAINTIFF KAY JACKSON
PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)

1